

**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

_____

*970 Broad Street, 7th floor*          *973-645-2793*
*Newark, New Jersey 07102*

April 11, 2022

<u>**Via Email**</u>

The Honorable Katherine Hayden
United States District Judge
U.S. Post Office & Courthouse
2 Federal Square
Newark, NJ 07101

      Re:   *United States v. Quadree Smith*
            Crim. No. 03-cr-844 (KSH)

Dear Judge Hayden:

Please accept this letter brief in opposition to the *pro se* motion for compassionate release submitted by defendant Quadree Smith ("Smith" or the "Defendant"). D.E. 954. This motion should be denied because (1) the Defendant does not present a medical condition that places him at enhanced risk of severe illness from COVID-19; and (2) the Defendant has otherwise failed to identify extraordinary and compelling reasons warranting such a reduction. Moreover, even if there were an extraordinary and compelling reason to consider compassionate release for the Defendant, the Section 3553(a) and 3142(g) factors weigh against granting such relief.

## I.    Background

### A.    Smith's Criminal Conduct and Sentencing

As set forth in the Presentence Report ("PSR") ("Ex. A"), on January 5, 2006, the Defendant and 17 other individuals were charged in a 68-count Third Superseding Indictment in the District of New Jersey with racketeering, racketeering conspiracy, and various other offenses including violent crimes in aid of racketeering (murder conspiracy, murder, attempted murder, and assault with a dangerous weapon), offenses related to firearms, and a heroin distribution conspiracy. Ex. A ¶ 8; D.E. 229.

On September 21, 2006, the Defendant pled guilty to Count Two and Count 49 of the Third Superseding Indictment. D.E. 497. Count Two charged the Defendant with racketeering, in violation of Title 18, United States Code, Section 1962(c) and 2. D.E. 229. The predicate acts underlying the offense to which the Defendant pled guilty consisted of one murder, four attempted murders, one conspiracy to murder, one heroin distribution conspiracy, and one individual sale of heroin. *Id.* Count 49 charged that from approximately February 2002 through June 18, 2022, the Defendant knowingly and willfully conspired and agreed with others to engage in the business of dealing in firearms without having a license to do so, and in the course of such business, shipped, transported, and received firearms in interstate and foreign commerce, contrary to Title 18, United States Code, Section 922(a)(1)(A), in violation of Title 18, United States Code, Section 371. *Id.*

The crimes to which the Defendant pled guilty in this matter arose from actions taken by the Defendant in furtherance of his membership and association in the Double II subset of the Bloods street gang ("Double II"). Ex. A ¶ 4. Acts of violence were central to the Double II's operations. For example, admission into the gang required a prospective member to either: (1) commit an act of violence against someone else in the name of the gang; or (2) submit to a 31-second beating by other members of the gang. *See* Ex. A ¶ 107. The Double II's pledge was:

> I pledge allegiance to the flag of the UBN of this chapter for all the real OGs for which we stand one one set under the oath for each blood to carry out all killings of the Bloods Constitution. We are loved by few, hated by many but respected by all. Even if the wicked enemy oppresses us, we make sure he knows and tastes death. Even if the odds are against us, Bloods will always rule.

Ex. A ¶ 111. The Defendant lived up to the pledge by committing multiple acts of violence in furtherance of Double II. For instance, on or about April 29, 2000, the Defendant aimed a loaded .45 caliber firearm directly at a man and shot him. The man, who was unarmed, died on the scene. *Id.* ¶ 126-130. The Defendant subsequently admitted to multiple people that he killed the man, and he later admitted to this Court that he killed the man because of a dispute over money. *Id.*

On April 17, 2007, this Court sentenced the Defendant to a 314-month term of imprisonment, adjusting the term of imprisonment to provide the Defendant with credit for a 46-month period of imprisonment already served by the Defendant prior to his guilty plea. D.E. 625. At the time he was sentenced, the Defendant was 26 years old and was determined to be in criminal history

- 2 -

category VI.  Ex. A ¶¶ 353, 356.  His guideline range was life imprisonment.  Ex. A ¶ 391.  The Defendant is serving his sentence at FCI Victorville Medium I, a medium security facility in Adelanto, California that is part of FCC Victorville.  The Defendant has an anticipated release date of September 13, 2029, according to the Bureau of Prisons ("BOP").

**B.    Request for Compassionate Release**

On or about December 10, 2021, the Defendant submitted a request for compassionate release to the warden of FCC Victorville.  The request was based on (1) the Defendant's reported medical condition of █████████████ █████████  purportedly placing him at an increased risk should he contract COVID-19; (2) the Defendant purportedly being the primary caregiver for his ill mother; and (3) the Defendant's young age at the time he committed the offenses for which he was convicted.  D.E. 954, Ex. B.  According to the Defendant, as of January 26, 2022, the warden had not responded to his request.  D.E. 954.  On or about March 11, 2022, the Defendant submitted a motion to this Court for compassionate release.  *Id.*  Thus, the government agrees that more than 30 days have passed since the Defendant's request to the warden, and that he therefore has satisfied the administrative exhaustion requirement set forth in 18 U.S.C. § 3582(c)(1)(A).



The undersigned obtained the Defendant's medical records from BOP, which are filed under seal as Exhibit B.  The records reveal that ███████████ █████████████████████████████████████████████████████████████████ ████████████████████████  The Defendant states in his motion that he was diagnosed with █████████████████████████████████████  .  D.E. 954 at 2.  In particular, the Defendant states that █████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ *Id.*  While  the  Defendant's █████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████  Ex. B at 2.

Even if the Court determined that the Defendant actually suffers from ███ ████████████████, the Defendant has not demonstrated that his condition places him at an increased risk of having an adverse outcome if he were to contract COVID-19.  For instance, while the CDC has identified certain serious ██████████████████  as increasing the risk of an adverse outcome from COVID-19— such as ████████—██████████████████████████  does not appear to be one of those conditions.

- 3 -

The Defendant's medical records indicate that on ████████████, the Defendant refused the COVID-19 vaccine. Ex. B at 74. After refusing the vaccine, the Defendant received a dose of ████████ on ████████████, and received another dose on ████████████. *Id.*

### C.    BOP's Response to the COVID-19 Pandemic

As the Court is aware, from the moment the pandemic began, the Bureau of Prisons (BOP) made extensive changes to its operations, based on a plan that was prepared over many years, and refined in early 2020 in consultation with the Centers for Disease Control and the World Health Organization. Those efforts continue.

The government recognizes that the COVID-19 case rate at a particular institution may change at any time. We therefore focus primarily on considerations specific to the Defendant. But BOP's success at many institutions in limiting the spread of the virus, and in stemming outbreaks when they occur, provides an important backdrop for the Defendant's motion.

BOP's "action plan" is described in detail at www.bop.gov/coronavirus/. As part of that plan, all newly arriving inmates are quarantined and not released into the general population until 14 days have passed and the inmate has tested negative; inmate movement within an institution is restricted in order to promote social distancing; mask wearing by inmates and staff is required; all facility staff are screened for symptoms daily; social visiting has been suspended at nearly all institutions; and access by other outsiders is restricted to only those performing essential services, who are also screened before entry.

In addition, acting under the authority granted in the CARES Act, BOP has transferred many thousands of inmates to home confinement, focusing on nonviolent offenders who have served the majority of their sentences.[1]    This

---

[1]    This Court does not have authority to grant a transfer to home confinement, or review BOP's administrative decision regarding that issue. *See* 18 U.S.C. § 3621(b) (BOP's designation decision is not subject to judicial review); *see also, e.g.*, *United States v. Aguibi*, -- F. App'x --, 2021 WL 2623415, n.2 (3d Cir. June 25, 2021) (not precedential; per curiam) ("To the extent that Aguibi requested a transition to home confinement, the Bureau of Prisons has the sole authority to place a prisoner in home confinement."); *United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021); *United States v. Houck,* 2 F.4th 1082, 1085 (8th Cir. 2021); *United States v. Mabe*, 2020 U.S. Dist. LEXIS 66269, at *1 (E.D. Tenn. Apr. 15, 2020) ("the CARES Act places decision making authority solely within the discretion of the Attorney General and the Director of the Bureau of

initiative, combined with the reduced number of new arrivals during the pandemic and the ordinary release of prisoners upon completion of their sentences, has led to a dramatic decrease in the total BOP population, which in turn has increased opportunities for social distancing and reduced the strain on BOP resources.  The total BOP population is now more than 10% less than it was at the outset of the pandemic, standing at the lowest level in decades.

When an outbreak does occur, any infected inmate is immediately quarantined, and all contacts (including entire housing units if warranted) are tested and quarantined as necessary, until all contacts return at least two negative tests in a two-week period.

All of these strenuous efforts have been fruitful, now abetted by widespread vaccination (discussed below).  It is notable that the rate of deaths in federal prisons has been comparable to that in the general U.S. population, a notable achievement given the known risks of viral spread in a congregate prison setting.[2]  Further, the incidence of positive cases in all BOP institutions has been sharply declining for months, with nearly all institutions currently reporting no cases or case tallies in the single digits.

Specifically, as it relates to the Defendant, BOP's aggressive efforts have extended to FCI Victorville Medium 1, which currently houses 1,479 inmates.  At present, there are two inmates at the facility who are reported positive.  Previously, 553 inmates at the facility tested positive and recovered.  Since the beginning of the pandemic, three COVID-related deaths have been reported at the facility.  The latest statistics are available at www.bop.gov/coronavirus.

### D.    Vaccinations

BOP worked with the CDC and the federal government's COVID-19 Vaccine/Therapeutics Operation (formerly known as Operation Warp Speed) to ensure that BOP received the COVID-19 vaccines as they became available, and then offered the vaccines to all willing staff members and inmates, beginning first with staff members (who present a more likely vector for COVID-19 transmission into an institution), and then offering the vaccines to inmates in

---

Prisons. . . . This Court therefore does not have power to grant relief under Section 12003 of the CARES Act.").

[2]  While there have been 292 inmate deaths related to COVID-19 at BOP institutions (which at the outset of the pandemic held over 157,000 inmates), there have been over 980,000 deaths in the general population.  Both figures represent tragedies, but the Defendant has not shown that the toll in BOP facilities is materially worse than in the rest of the country.

order of priority of need in accordance with CDC guidelines. As a court observed, "Since the vaccines became available, the Bureau of Prisons diligently and efficiently administered the doses allocated to it, leading all jurisdictions and Federal entities in its vaccine utilization rate." *United States v. Roper*, 2021 WL 963583, at *3 (E.D. Pa. Mar. 15, 2021) (Kearney, J.) (footnote omitted).

As of this writing, through an intensive effort over the past months, BOP has offered a vaccine to every inmate in BOP-managed institutions. BOP has administered a total of 311,063 doses to inmates and staff. Going forward, BOP will continue to offer vaccines to newly arrived inmates, and to those inmates who initially declined a vaccine if they change their minds, as expeditiously as possible as supplies are available.

Vaccination statistics are available for FCC Victorville, which includes FCI Victorville Medium 1, where the Defendant is being housed. To date, BOP has fully vaccinated 556 staff members and 3,860 inmates at FCC Victorville (which is higher than the current inmate population—3,824 inmates—and presumably includes inmates that are no longer being housed at FCC Victorville).

The clinical guidance provided to BOP health services professionals is available at https://www.bop.gov/resources/pdfs/covid19_vaccine_guidance_20210311.pdf. The latest information on BOP's vaccination efforts, including the number of completed vaccinations at each institution, is available at https://www.bop.gov/coronavirus/, and is updated every weekday.

## II.    Discussion

### A.    Governing Law

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, provides in pertinent part:

(c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of

- 6 -

probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i)  extraordinary and compelling reasons warrant such a reduction . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Further, 28 U.S.C. § 994(t) provides: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."[3]

The Sentencing Guidelines policy statement appears at § 1B1.13, and provides that the Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  Recently, the Third Circuit concluded that this policy statement is not currently binding in connection with motions filed by defendants.  *See United States v. Andrews*, -- F.4th --, 2021 WL 3852617 (3d Cir. Aug. 30, 2021).  Nevertheless, the Court recognized that the policy statement "still sheds light on the meaning of extraordinary and compelling reasons."  *Id.*  Other courts of appeals have agreed that the policy statement provides important guidance.  *See, e.g., United States v. McGee*, 992 F.3d 1035, 1045 (10th Cir. 2021) (noting that "Congress intended for the Sentencing Commission's policy statements to serve as guideposts for district courts"); *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to the United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 informs our analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) ("The substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application

---

[3]  The inmate does not have a right to a hearing.  Rule 43(b)(4) of the Federal Rules of Criminal Procedure states that a defendant need not be present where "[t]he proceeding involves the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)."  *See Dillon v. United States,* 560 U.S. 817, 827-28 (2010) (observing that, under Rule 43(b)(4), a defendant need not be present at a proceeding under 18 U.S.C. § 3582(c)(2)).

Notes provide a working definition of 'extraordinary and compelling reasons'; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused."); *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). The issue is particularly immaterial where, as here, the motion rests on medical grounds, and the Commission has stated a well-accepted definition of the circumstances that qualify as extraordinary. *See United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021) (while the Fourth Circuit holds that "§ 1B1.13 is not applicable to *defendant-filed* motions under § 3582(c)," the court recognizes that "it defines, in the medical context, the same substantive term that applies to *BOP-filed* motions. One might reasonably believe therefore that the term 'extraordinary and compelling reasons' will be defined the same for *defendant-filed* motions.").

In application note 1 to the policy statement, the Commission identifies the "extraordinary and compelling reasons" that may justify compassionate release. The note provides as follows:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A)   Medical Condition of the Defendant.—
>
> > (i)   The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> >
> > (ii)   The defendant is—
> >
> > > (I)   suffering from a serious physical or medical condition,
> > >
> > > (II)   suffering from a serious functional or cognitive impairment, or
> > >
> > > (III)   experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)    Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C)    Family Circumstances.—

(i)    The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D)    Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

In general, the defendant has the burden to show circumstances meeting the test for compassionate release.  *See, e.g.*, *United States v. Neal*, 2020 WL 5993290, at *4 (E.D. Pa. Oct. 9, 2020) (Gallagher, J.); *United States v. Adeyemi*, 2020 WL 3642478, at *16 (E.D. Pa. July 6, 2020) (Kearney, J.).   As the terminology in the statute makes clear, compassionate release is "rare" and "extraordinary."   *United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (Johnson, J.) (citations omitted).

## B.    COVID-19 and Compassionate Release

The fact of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not alone provide a basis for a sentence reduction.   The guideline policy statement describes specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population.   The Third Circuit therefore held: "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."   *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020) (per curiam)

(not precedential) ("[T]he existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit."); *see also United States v. Hegyi*, 2020 WL 7090710, at *2 (N.D. Ind. Dec. 4, 2020) (Van Bokkelen, J.) ("the presence of COVID-19 in a prison, even in large numbers, does not justify compassionate release on its own.").

The government acknowledges, however, that an inmate who has not been offered a vaccine, who presents a risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19, and who is not expected to recover from that condition, presents "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility" U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I), as, due to his condition, the defendant may be less able to protect himself against an unfavorable outcome from the disease. *See United States v. Tartaglione*, 2020 WL 3969778, at *5-6 (E.D. Pa. July 14, 2020) (Slomsky, J.) ("a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held" (quoting *United States v. Somerville*, 463 F. Supp. 3d 585, 597 (W.D. Pa. 2020) (Ranjan, J.)). *See also United States v. Elias*, 984 F.3d 516, 521 (6th Cir. 2021) (affirming denial of compassionate release and observing that "the district court properly considered the CDC guidance that was in effect at the time . . . . Relying on official guidelines from the CDC is a common practice in assessing compassionate-release motions.").

The CDC's list of risk factors appears at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.  It reports a list of conditions that "can make you more likely to get severely ill from COVID-19."  An inmate who has not been offered a vaccine, who presents a condition on that list, presents an "extraordinary and compelling reason" allowing consideration of compassionate release.[4]

---

[4]    Before March 29, 2021, the CDC presented two separate lists of conditions that either definitively entailed a greater risk of severe illness or "might" entail a greater risk of severe illness.  Those "might" conditions were asthma (moderate-to-severe); cerebrovascular disease; cystic fibrosis; hypertension; immunocompromised state from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines; neurologic conditions, such as dementia; liver disease; overweight; pulmonary fibrosis; thalassemia; and type 1 diabetes mellitus.  At that time, the government maintained—and most courts agreed—

- 10 -

### C.   The Defendant's Circumstances

The Defendant is not eligible for compassionate release because he has not identified any condition that presents an "extraordinary and compelling reason" to justify release.  The Government addresses, in turn, the three reasons the Defendant submits warrant his compassionate release: (1) his contention that ████████████████         places him at an increased risk for complications related to COVID-19; (2) his purported status as his mother's primary caregiver; and (3) his young age at the time of his offense.

### a.   The Defendant's Purported ████████████████   Is Not a Medical Risk Factor and He Has Been Vaccinated Against COVID-19

The Defendant claims he suffers from ████████████████, and that this condition "increase[es] the risk that [he] will die or experience serious complications from COVID-19."  D.E. 954 at 1.  As noted above, ████████ ████████████████   is not one of the ████████████  conditions that the CDC has identified as increasing the risk of an adverse outcome from COVID-19.  Notably, courts who have considered similar motions for compassionate release based on

---

that inmates with conditions on the "might" list did not present an extraordinary basis for relief.  *See, e.g.*, *United States v. Durham*, 2020 WL 5577884, at *2 (W.D.N.C. Sept. 17, 2020) (Cogburn, J.); *United States v. Moldover*, 2020 WL 6731111, at *9 (E.D. Pa. Nov. 13, 2020) (Slomsky, J.) ("District courts have routinely denied motions for compassionate release based on allegations of only potential COVID-19 risk factors, including asthma and hypertension.").

In the March 29 revision, the CDC merged the two lists without extensive explanation.  The CDC also presents a page with information for healthcare providers, which discusses the evidentiary basis for designating each risk factor and indicates that there remains less extensive support for drawing conclusions regarding most conditions formerly listed as "might" factors.  *See* https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html.  The government nevertheless continues to follow CDC guidance and therefore relies on the CDC's expanded list to define what constitutes an "extraordinary and compelling" basis for consideration of compassionate release of an inmate who has not been offered a vaccine.

It also bears noting that although age is not listed as a separate risk factor, the CDC has emphasized that it is an important indicator of risk.  The CDC page regarding risk factors states: "More than 80% of COVID-19 deaths occur in people over age 65, and more than 95% of COVID-19 deaths occur in people older than 45."

███████████████████████ have generally rejected them.  *See, e.g., United States v. Bryant*, 2020 WL 6449314, at *2 (M.D. Fla. Nov. 3, 2020) (observing that "[t]he CDC does not describe ███████████████████████████ without more, as a risk factor for severe illness from coronavirus"); *United States v. Poncedeleon*, 2020 WL 3316107, at *3 (W.D.N.Y. June 18, 2020) (holding that defendant with ██████████████████ and other conditions "[had] not demonstrated that she was in the class of medically vulnerable inmates for whom [COVID-19] presents a palpable risk of death or serious harm"); *United States v. Straite*, 2021 WL 861472, at *4 (M.D.N.C. Mar. 8, 2021) ("[A]s for [the defendant's] ████████ ██████ he CDC includes ███████████████ █████████████████████ as among the conditions that do place individuals at increased risk of severe illness from COVID-19.  Yet, [the defendant] does not claim to have any of those diagnoses."); *United States v. Brandon*, 2020 WL 4208064, at *2 (W.D.N.C. July 22, 2020) (denying compassionate release motion filed by defendant who reported suffering from █████████████████████████████████████████); *United States v. Morris*, 2020 WL 5231319, at *3 (D. Kan. Sept. 2, 2020) (stating that "to the extent [the defendant] does suffer from █████████████████ ███████████ these are not among the conditions that may lead to increased risk of complications from COVID-19 identified by the CDC."

Here, the Defendant has failed to establish that his purported ██████████ ██████████████ diagnosis puts him at risk for severe illness from COVID-19.  In support of his contention that he suffers from a condition that increases the risk that he will "die or experience serious complications from COVID-19," the Defendant points to a ████████████████████████████████ ████████ D.E. 954 at 2.  To the contrary, records ████████ indicate that the test yielded ██████████ ████████████████████████████████ Ex. B at 2.  More recently, as indicated above, there is no indication in the Defendant's medical records from BOP that he has experienced significant medical symptoms, whether related to ██ ██████████████████████████.  *See* Ex. B.

Accordingly, the Defendant has not shown that his reported ██████████ ████████████ rises to the level that courts have found to be sufficiently severe to constitute an "extraordinary and compelling risk" that warrants compassionate release.  The motion should therefore be denied.  *See, e.g., United States v. Williams*, 2020 WL 4001045, at *2 (E.D. Pa. July 14, 2020) (Bartle, J.) (denied for inmate who presents no health conditions); *United States v. Cato*, 2020 WL 4193055, at *2 (E.D. Pa. July 21, 2020) (Beetlestone, J.) (same); *United States v.*

*Moore*, 2020 WL 4193012, at *1 (E.D. Pa. July 21, 2020) (Pappert, J.) (same); *United States v. Ramirez-Ortega*, 2020 WL 4805356, at *2 (E.D. Pa. Aug. 18, 2020) (DuBois, J.) (same); *United States v. Coles*, 2020 WL 1899562 (E.D. Mich. Apr. 17, 2020) (Drain, J.) (denied for 28-year-old inmate at institution with outbreak); *United States v. Haney*, 454 F. Supp. 3d 316 (S.D.N.Y. Apr. 13, 2020) (Rakoff, J.) (denied for 61-year-old with no other conditions).

Moreover, the Defendant has received two doses of the ███████ vaccine, with the most recent dose provided to the Defendant in ██████████, after having rejected the vaccine. That similarly precludes eligibility for compassionate release. *See, e.g.*, *United States v. Smith*, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021) (Ludington, J.) ("absent some shift in the scientific consensus, Defendant's vaccination against COVID-19 precludes the argument that his susceptibility to the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A)."). Thus, even if the Court were to determine that the Defendant's reported ████████████ is a risk factor here, the Defendant no longer presents an "extraordinary and compelling reason" because he was recently vaccinated.

As the government has explained, the pertinent guideline policy statement treats as an "extraordinary and compelling" circumstance "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 app. note 1(A)(ii). The government during the pandemic has acknowledged that an unvaccinated inmate who presents a medical risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19, and who is not expected to recover from that condition, presents an extraordinary and compelling circumstance under that provision.

That circumstance now does not exist, as the available vaccines permit effective self-care against severe illness or death that may be caused by the coronavirus. The CDC has consistently and strongly advised that every person 12 years of age and older receive one of the vaccines that has received emergency use authorization from the FDA. The CDC states that the vaccines are "safe and effective," and "[g]etting vaccinated prevents severe illness, hospitalizations, and death." https://www.cdc.gov/aging/covid19/covid19-older-adults.html (accessed Sept. 12, 2021).

The vaccines were the subject of extensive clinical trials before authorization, which revealed high effectiveness in preventing infection, and particularly in preventing severe illness or death. The data thus far show remarkable success in the real world. The CDC reports that as of September 7, 2021, there were more than 176 million Americans who had been fully

vaccinated.  Within that group, only approximately 9,000 hospitalizations from symptomatic "breakthrough infections" had been reported, and only approximately 2,182 deaths (0.0012%).  https://www.cdc.gov/vaccines/covid-19/health-departments/breakthrough-cases.html (accessed Sept. 12, 2021). These data suggest a level of risk from COVID-19 of a vaccinated person far less than that faced by prisoners and all other persons from myriad other ailments and hazards of daily life.  Moreover, courts have specifically recognized that because the COVID-19 vaccines mitigate against potential harm, incarceration during the COVID-19 pandemic, without more, does not warrant release.  *See United States v. Butler*, 2022 WL 317753, at *4 (E.D. Mich. Feb. 2, 2022) ("Because existing COVID-19 vaccines diminish the health risks of the Delta and Omicron variants, and these vaccines are available to all federal prisoners, incarceration itself does not increase the danger of COVID-19 to Defendant.  In other words, given that COVID-19 vaccines mitigate the potential harm of the Delta and Omicron variants, it is not an 'extraordinary and compelling reason' to grant compassionate release.").  Accordingly, once a vaccine is available to an inmate, compassionate release is not warranted based on the threat of COVID-19 alone.  *See United States v. Reed*, 2021 WL 2681498, at *4 (E.D. Pa. June 30, 2021) (Schmehl, J.) ("Now that COVID-19 vaccinations are being administered throughout the Bureau of Prisons, compassionate release motions [based on COVID-19] generally lack merit.").

The vast majority of courts have agreed with this conclusion.[5]  Courts routinely deny relief to an inmate who has been vaccinated.  *United States v. Wills*, 2021 WL 2179256, at *1 (D. Or. May 27, 2021) (Brown, J.) (citing many cases); *United States v. McBriarty*, 2021 WL 1648479, at *6 (D. Conn. Apr. 27, 2021) (Underhill, J.) ("Given current understanding, the Pfizer vaccine is so effective at preventing serious illness from COVID-19 that the threat of McBriarty's becoming seriously ill is miniscule—and certainly not extraordinary and compelling."); *United States v. Otero-Montalvo*, 2021 WL 1945764, at *3 (E.D. Pa. May 14, 2021) (Schmehl, J.) (41-year-old defendant presents asthma and obesity, but has been vaccinated; the court dismisses his complaints regarding prison management, stating, "The BOP and FCI Fort Dix administering vaccinations shows that they are taking the appropriate precautions to the COVID-19 pandemic and are safeguarding inmates"); *United States v. Harris*, 2021 WL 1516012, at *2 (D. Md. Apr. 16, 2021) (Gallagher, J.) ("Clearly, there can be no bright-line rule that a vaccinated individual is no longer at compellingly elevated risk, but in most instances, the risk of complications is dramatically reduced.  Thus, while anything is possible, there is no articulable

---

[5]  The citations provided in this memorandum, of decisions denying motions of defendants who are vaccinated or declined a vaccine, represent just a fraction of the countless consistent decisions in recent months on these points. The government will provide additional citations to the Court at its direction.

reason to believe that Harris will be a non-responder or will have a different reaction to the vaccine than the vast majority of its recipients, who develop significant antibody protection to the virus.  On the present record, then, this Court concludes that Harris's vaccination status removes his borderline obesity from the category of risk constituting an 'extraordinary and compelling reason' to consider compassionate release."); *United States v. Hannigan*, 2021 WL 1599707, at *5-6 (E.D. Pa. Apr. 22, 2021) (Kenney, J.) ("Other courts in the Third Circuit have agreed that the protection provided by an authorized COVID-19 vaccination reduces the risk of serious illness from COVID-19 to such a degree that the threat of the pandemic alone cannot present an extraordinary and compelling reason for compassionate release.") (citing cases); *Gale v. United States*, 2021 WL 1912380, at *3 (E.D. Va. May 12, 2021) (Jackson, J.) (relief is denied notwithstanding obesity, chronic kidney disease, and hypertension, in light of vaccination and CDC information regarding efficacy; "With this information from the CDC and knowing that Petitioner is fully vaccinated and in an environment in which many of the inmates within his facility are also vaccinated (and continuing to be vaccinated), the Court cannot conclude that Petitioner's circumstances are so extraordinary as to warrant release from incarceration").

Likewise, courts routinely deny compassionate release to an inmate who declined a vaccination.  The Seventh Circuit stated:

[A] prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an "extraordinary and compelling" justification for release.  The risk is self-incurred. . . .  The federal judiciary need not accept a prisoner's self-diagnosed skepticism about the COVID-19 vaccines as an adequate explanation for remaining unvaccinated, when the responsible agencies all deem vaccination safe and effective . . . . A prisoner who can show that he is unable to receive or benefit from a vaccine still may turn to this statute, but, for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an "extraordinary and compelling" reason for immediate release.

*United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021).  *See also, e.g.*, *United States v. Downer*, 2021 WL 2401236, at *2 (D. Md. June 11, 2021) (Gallagher, J.) ("Courts now widely recognize that a refusal to take preventative measures to protect oneself from COVID-19 undermines any assertion that the risk of viral infection constitutes an extraordinary and compelling reason justifying release."); *United States v. Sawyers*, 2021 WL 2581412, at *4 (C.D. Cal. June 22, 2021) (Lew, J.) ("The glaring consensus among district courts is that refusal of a COVID-19 vaccine subverts a defendant's compassionate release motion."); *United States v. Baeza-Vargas*, 2021 WL 1250349, at *2-3 (D. Ariz.

Apr. 5, 2021) (Teilborg, J.) ("Judges of this Court, as well as others around the country, have ruled with consistency that an inmate's denial of a COVID-19 vaccination weighs against a finding of extraordinary and compelling circumstances.") (citing more than a dozen cases); *United States v. Greenlaw*, 2021 WL 1277958, at *7 (D. Me. Apr. 6, 2021) (Woodcock, J.) (the court reviews CDC guidance and numerous other decisions and concludes, "The risk-benefit analysis in favor of inoculation is so overwhelming that the Court holds Mr. Greenlaw's refusal to be vaccinated against his motion for compassionate release"); *United States v. Garcia*, 2021 WL 1499312, at *3 (C.D. Ill. Apr. 16, 2021) (Mihm, J.) ("Courts across the country appear to have consistently ruled that an inmate's refusal of a COVID-19 vaccine weighs against a finding of extraordinary and compelling circumstance to justify relief. . . . Indeed, while Defendant is not obligated to take the vaccine, it is inconsistent for him to both claim fear of risk of contracting the virus while refusing medical treatment that would drastically reduce his risk."); *United States v. Ortiz*, 2021 WL 1422816, at *3 & *5 n.6 (E.D. Pa. Apr. 15, 2021) (Leeson, J.) ("Overlooking a medically at-risk petitioner's refusal of an available vaccine and granting him compassionate release would likely incentivize other medically at-risk prisoners to decline an offer of a vaccine, putting themselves and others at risk."); *United States v. Jackson*, 2021 WL 1145903 (E.D. Pa. Mar. 25, 2021) (Beetlestone, J.) (the court denied relief even though the defendant was 58 years old and suffered from, among other conditions, obesity (BMI of 31.2), type II diabetes, hypothyroidism, hypertension, asthma, and high cholesterol, stating that "the Court finds that her unexplained refusal to accept a COVID-19 vaccination when offered negates her otherwise compelling medical reasons for release."); *United States v. Cooper*, 2021 WL 1629258, at *7 (E.D. Pa. Apr. 27, 2021) (Joyner, J.) ("While he is certainly well within his rights to make his own decisions as to his own medical care, the Court can reach no other conclusion but that if Defendant had any serious concerns or fears for his health, safety and well-being as a consequence of the coronavirus, he would have availed himself of the COVID-19 vaccine which was offered."); *United States v. Baptiste-Harris*, 2021 WL 1583081, at *2 (D. Me. Apr. 22, 2021) (Torreson, J.) ("The Defendant offers no support for the idea that he can argue that he is in harm's way, reject measures to mitigate the harm, and then use the continued risk of harm as a justification for release. . . . He cannot, on the one hand, listen to the Centers for Disease Control's advice about who is most at risk of serious illness, but then ignore the same agency's advice to get a vaccine.").

As noted, the vaccines have proven effective against COVID-19, including the most recent Delta and Omicron variants, and therefore courts continue to deny compassionate release motions based on the risk from COVID-19. *See, e.g., United States v. Gibbs*, 2021 WL 3929727, at *3 (E.D. Pa. Sept. 2, 2021) (Bartle, J.) (the court does not accept the argument that vaccinated inmate is at more risk as a result of the Delta variant; "Although defendant has hypertension

- 16 -

which the CDC recognizes as a potential risk factor for more serious cases of COVID-19, defendant has been inoculated against COVID-19 with a highly effective vaccine. As such he is currently at an extremely low risk of developing a serious case of COVID-19. His medical condition is not an extraordinary and compelling reason at this time for granting compassionate release because of the COVID-19 pandemic."); *United States v. Jackson*, 2021 WL 3417910, at *3 (E.D. Mich. Aug. 5, 2021) (Goldsmith, J.) ("While it is true that new variants—particularly the Delta variant—are on the rise, the CDC states that '[c]urrent data suggest that COVID-19 vaccines authorized for use in the United States offer protection against most variants currently spreading in the United States.' Thus, Jackson could have mitigated his fear of COVID-19 variants by getting vaccinated. Accordingly, the Court will not grant Jackson release based on his alleged fear of variants."); *United States v. Long*, 2021 WL 3185600, at *5 (D.D.C. July 28, 2021) (Friedman, J.) (citing sources reporting the effectiveness of the Pfizer vaccine against the Delta variant, and stating, "Because Mr. Long has received both doses of the Pfizer-BioNTech COVID-19 vaccine, the presence of the delta variant does not make his circumstances extraordinary and compelling."); *United States v. Ogunlana*, 2021 WL 3129327, at *2 (D. Md. July 23, 2021) (Gallagher, J.) (denying relief to defendant who declined vaccine; "The scientific evidence suggests that the available vaccines provide significant protection against complications from COVID-19 infection, even with the emergence and current prevalence of the 'Delta variant.'"); *United States v. Newsome*, 2021 WL 4066332, at *6 (E.D. Cal. Sept. 7, 2021) (Drozd, J.) (vaccinated inmate is not at undue risk due to the Delta variant; "At this point, medical evidence strongly suggests that fully vaccinated individuals remain very well protected against becoming severely ill from COVID-19 even if they contract it."); *United States v. Austin*, 2021 WL 3669318, at *2 (D. Idaho Aug. 18, 2021) (Winmill, J.) (relief is not warranted in light of vaccination; the threat of the Delta variant is not sufficient); *United States v. Barnett*, 2021 WL 3550217, at *3 (S.D.N.Y. Aug. 10, 2021) (Preska, J.) (relief is not warranted in light of Pfizer vaccination; the threat of the Delta variant is not sufficient); *United States v. Meza-Orozco*, 2021 WL 3630519, at *4 (W.D. Wash. Aug. 17, 2021) (Settle, J.) ("The Court understands that the science is still evolving as to vaccine efficacy and the Delta variant, but it appears conclusively established that fully vaccinated individuals are reasonably protected from hospitalization and death"; inmate received Janssen vaccine); *United States v. Graf*, 2021 WL 3856087 (E.D. Wis. Aug. 27, 2021) (Stadtmueller, J.) (denying motion for reconsideration based on emergence of the Delta variant, given that vaccines remain effective); *United States v. Kearney*, 2021 WL 3883593, at *10 (D. Md. Aug. 31, 2021) (Hollander, J.) (the defendant does not present extraordinary circumstances in light of his refusal of a vaccine; the existence of the Delta variant does not change this assessment); *United States v. Swarn*, 2021 WL 4077344, at *2 (E.D. Mich. Sept. 8, 2021) (Murphy, J.) (relief denied to inmate who declined vaccination; given the CDC's assessment, "concerns over variants, at this time, do not change the

- 17 -

Court's analysis."); *United States v. Evans*, 2021 WL 3912547, at *2 (E.D. Wis. Sept. 1, 2021) (Pepper, C.J.) ("While the defendant's concerns about the Delta variant are valid ones, he had the ability to mitigate the risk to himself by getting vaccinated.").

It is possible that the scientific consensus may shift if, for example, the efficacy of the vaccines changes over time, or variants emerge that bypass the vaccines.  The government will address those issues as they arise.  But at present, absent such a "shift in the scientific consensus, vaccination against COVID-19 would preclude the argument that a defendant's susceptibility to the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A)." *United States v. Smith*, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021) (Ludington, J.). *See also United States v. Hill*, 2021 WL 1807285, at *2 (N.D. Ohio May 5, 2021) (Polster, J.) ("[I]f such scientific evidence later materializes, nothing will prevent Hill from filing another motion for compassionate release."); *United States v. White*, 2021 WL 964050, at *2 (E.D. Mich. Mar. 15, 2021) (Levy, J.) ("Defendant is free to renew his motion should more information emerge suggesting that the Pfizer vaccine cannot protect him from new imminent strains of COVID-19. However, at this time, the Court does not find extraordinary and compelling circumstances based on that speculation.").

To date, courts have generally granted compassionate release where the inmate suffers from significant ailments that specifically raise the risk of an adverse outcome from COVID-19, is serving a short sentence or has served most of a lengthier one, does not present a danger to the community, and/or is held at a facility where a notable outbreak has occurred.  A court summarized: "The common features of the recent cases where inmates have been granted judicial relief on motions for compassionate release due to the pandemic are either (1) properly exhausted claims that unreasonably were refused despite the existence of severe, chronic, or terminal conditions that could warrant release even in the absence of a pandemic, or (2) in cases where the defendants had severe medical conditions that placed them at high risk of coronavirus complications, were housed at a facility with confirmed cases, and had served a large majority of their sentences." *United States v. Ball*, 2020 WL 4816197, at *6 (E.D. Mich. Aug. 19, 2020) (Lawson, J.).

Courts have generally denied release in circumstances comparable to those presented here, even before the advent of widespread vaccination.  *See, e.g.*, *United States v. Edington*, 2020 WL 2744140, at *5 (D. Colo. May 27, 2020) (explaining that during the pandemic "the danger presented to the community by the type of [financial] crimes for which Ms. Edington was sentenced is, if anything, more substantial."); *United States v. Meli*, 2020 WL 2114769 (S.D.N.Y. May 4, 2020) (denying relief notwithstanding defendant's health conditions, due to the nature of the crime involving a significant financial fraud); *United States*

*v. Shereshevsky*, 2020 WL 3250729 (S.D.N.Y. June 16, 2020) (denying relief due to "egregious fraud" committed by remorseless defendant); *United States v. Tartaglione*, 2020 WL 3969778, at *7 (E.D. Pa. July 14, 2020) (Slomsky, J.) (stating that relief would be inappropriate where the defendant committed a $2 million fraud against a public health clinic); *Dinning v. United States*, 2020 WL 1889361 (E.D. Va. Apr. 16, 2020) (denying relief for defendant who engaged in widespread fraud and presented no particular COVID-19 risk); *United States v. Van Sickle*, 2020 WL 2219496, at *5 (W.D. Wash. May 7, 2020) (observing that a history of fraud is a concern and noting that the financial implications of the pandemic are "circumstances [that] can lend themselves to even greater vulnerability to the very types of fraudulent schemes that [the defendant] has pursued in the past.")

In sum, absent a significant change in the current scientific assessment regarding the efficacy of the vaccines, the advent of widespread vaccine availability should bring to an end the unprecedented period in which compassionate release has been available based on the threat of the virus. Instead, sentence reductions based on medical conditions once again should be limited to extraordinary conditions that are terminal or severely limit an inmate's ability to function in a correctional setting. *See, e.g.*, *United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (Johnson, J.) (relief is "rare" and "extraordinary"); *United States v. Lisi*, 440 F. Supp. 3d 246, 251 (S.D.N.Y. 2020) (Failla, J.) ("[A] defendant's medical condition must be one of substantial severity and irremediability."). At present, the Defendant does not present any such condition.[6]

### b. The Defendant's Purported Caregiving Responsibilities Are Not An "Extraordinary and Compelling Reason" Warranting Compassionate Release

The Defendant contends that the Court should grant him compassionate release because he is the "only potential caregiver for his ailing mother," ███ ███████████████████████████ D.E. 954 at 5-6. In support of his motion, the Defendant has submitted ██████████ ██████████ .E. 954, Ex. A. However, the Defendant's representation that he is the only potential caregiver for his mother is belied by the fact that the Defendant has been in continuous custody since July 2003, nearly 19 years. Ex. A. ¶ 381. The reality is that the Defendant has not been, during most of his adult life, a

---

[6] The government further recognizes that an individual who contracts COVID-19, even if protected against severe illness, may later suffer from "long-haul" symptoms. This is not a basis for compassionate release at this time. If an inmate who previously suffered from COVID-19 later develops "long-haul" symptoms, his condition may be assessed at that time.

caregiver for his mother, who presumably has been self-sufficient or under the case of others while the Defendant has been imprisoned.

Furthermore, courts who have addressed this issue have generally held that the desire or need to care for an ailing parent is not a sufficient basis for compassionate release.  *See, e.g.*, *United States v. Ellsworth-Daway*, 2021 WL 2823081, at *2 (E.D. Pa. July 7, 2021) ("The [compassionate release] guidelines . . . limit relief in this circumstance to situations in which the caregiver of the defendant's minor child or children has died or become incapacitated, or the defendant's spouse or registered partner is incapacitated and the defendant would be the only available caregiver for the spouse or registered partner.  There is no provision in the guidelines for an inmate who claims that he should be released as the only available caregiver for an ailing parent.  Courts have generally denied release in circumstances comparable to those presented here."); *United States v. Smith*, 2021 WL 3641463, at *3 (E.D. Va. Aug. 17, 2021) ("Other courts have confronted this issue and have held that a need to care for, or a desire to care for, an ailing parent is not a sufficient basis for compassionate release."); *United States v. Ingram*, 2020 WL 3183698, at *2 (D. Md. June 15, 2020) (noting that "the Court's research suggests that a parent's health is not an "extraordinary and compelling" reason under 18 U.S.C. § 3582(c)(1)(A)"); *United States v. Mahoney*, 2022 WL 987179, at *2 (E.D. Mich. Mar. 31, 2022) ("[The defendant's] purported need to care for his parents does not present 'extraordinary and compelling' circumstances warranting compassionate release or a reduction in sentence."); *United States v. Newton*, 478 F. Supp. 3d 591, 595 (E.D. Mich. 2020) ("[T]he fact that Defendant's mother suffers from medical hardships, while unfortunate, does not in and of itself create a compelling reason to release Defendant."); *United States v. Adams*, 2022 WL 188117, at *3 (C.D. Ill. Jan. 20, 2022) ("While the Court certainly sympathizes with [the defendant's] family considerations, the Court is unable to conclude that provides a basis for compassionate release.  Undoubtedly, there are many federal prisoners who have parents or other family members who need someone to provide care.  However, such circumstances rarely warrant compassionate release.").

Accordingly, the Court should deny the Defendant's request for compassionate release on the basis that he is the only caregiver for his ailing mother.

### c. The Defendant's Young Age at the Time of the Offense, By Itself, Is Not An "Extraordinary and Compelling Reason" Warranting Compassionate Release

The Defendant contends that the Court should grant his motion for compassionate release because his young age at the time he was sentenced—26 years old—constitutes an "extraordinary and compelling" circumstance.  D.E.

954 at 1.  While some courts have recognized that a defendant's young age at the time of sentencing is an appropriate factor to consider when deciding compassionate release motions, young age, by itself, has not generally been found to be a sufficiently compelling reason warranting compassionate release. For instance, in *United States v. Andrews*, an Eastern District of Pennsylvania court held that the defendant's "young age and rehabilitation are not compelling reasons by themselves to warrant the Court's exercise of its discretion to reduce his sentence." *United States v. Andrews*, 2020 WL 4812626 (E.D. Pa. Aug. 19, 2020), *aff'd*, 12 F.4th 255 (3d Cir. 2021), *cert. denied*, 2022 WL 994375 (U.S. Apr. 4, 2022).  The *Andrews* district court stated that it was "not aware of any cases where young age at the time of the offense and rehabilitation were found to be both extraordinary and compelling to warrant granting compassionate release without other reasons to support it." *Id.*  The Third Circuit affirmed the district court's decision, and specifically noted the district court's consideration of the defendant's age and purported rehabilitation[7] in its opinion.  *United States v. Andrews*, 12 F.4th 255, 262 (3d Cir. 2021), *cert. denied*, 2022 WL 994375 (U.S. Apr. 4, 2022).

Notably, courts in this district that have considered young age as a relevant consideration in compassionate release motions have also considered the Defendant's criminal history at the time of sentencing.  For instance, in *United States v. Dickerson*, the Honorable John Michael Vazquez, United States District Judge for the District of New Jersey, observed that despite the defendant's young age at the time of the offense, he "had already accumulated enough criminal history points to qualify as a career offender." 2021 WL 753878, at *6 (D.N.J. Feb. 26, 2021).  Along similar lines, in *United States v. Herrera-Genao*, the Honorable Anne E. Thompson, United States District Judge for the District of New Jersey, recognized the limitations of considering a defendant's age when the offense conduct reflected deliberative decision-making. 2021 WL 2451820, at *8 (D.N.J. June 16, 2021).  Judge Thompson observed that the defendant's multiple bank robberies involved elements of "cold cognition" or "academic or deliberative decision[making]," stating that "[w]hen making those kinds of deliberative decisions, adolescents 16 and older reason about as well as adults." *Id.*  Here, by the time he was sentenced, the Defendant, despite his young age, had already accumulated 15 criminal history points and was determined to be in a criminal history category of VI. Ex. A. ¶ 353.

---

[7] While the Defendant does not appear to contend that his rehabilitation warrants compassionate release, such an argument would be futile because his disciplinary record demonstrates that no such rehabilitation has occurred.  The Defendant's BOP disciplinary record indicates that he was sanctioned in 2017 for possessing a dangerous weapon.  Ex. C.

For these reasons, the Defendant's young age at the time he was sentenced in this matter does not constitute an "extraordinary and compelling reason" warranting compassionate release.

### D.    The 3553(a) Factors Weigh Strongly Against Release

Even assuming, for the sake of argument, that the Defendant satisfied the criteria required for compassionate release, this Court should still deny his motion because the § 3553(a) factors weigh in favor of requiring him to continue serving his sentence to its conclusion.

First, the Defendant's offense was unquestionably serious.  18 U.S.C. § 3582(a)(1), (a)(2)(A).   The Defendant—who is serving a 314-month prison sentence for racketeering, with predicate acts that include murder, attempted murders, conspiracy to murder, and an extensive heroin distribution, as well as a firearms trafficking offense—continues to present a danger to the community. He should therefore be required to serve the sentence that this Court imposed fir his egregious criminal conduct.  As noted in the PSR, the Defendant was a member of a violent street gang that terrorized communities in Newark for years. And the Defendant personally accepted responsibility for committing horrific violence against multiple victims, including killing a man because of a dispute over money.  Ex. A ¶ 126-128.  The Defendant fails to demonstrate how early release from the sentence imposed by this Court reflects the seriousness of the offense.  *See* 18 U.S.C. § 3553(a).

Second, the Defendant's history and characteristics do not justify release. 18 U.S.C. § 3582(a)(1).  The Defendant has a troubling and lengthy criminal history—as noted above, the Defendant obtained 15 criminal history points despite being only 26 years old at the time of his sentencing.

Third, the need to provide just punishment and promote respect for the law, and the need for both specific and general deterrence, all weigh against reducing the Defendant's sentence.  18 U.S.C. § 3582(a)(2)(A), (B). As noted above, the Defendant's 314-month prison sentence was significantly below his advisory guideline range of life imprisonment. Ex. A ¶ 391.  Rewarding him with premature release based on his young age at the time he was sentenced or suspect claims that he suffers from an extraordinary medical condition and is the only available caregiver for his ailing mother—despite being incarcerated for nearly 19 years—would send the wrong message to the Defendant as well as others.

Fourth, the public would not receive the protection it needs if the Defendant's sentence is truncated.  The Defendant has served only a portion of his sentence and currently has an anticipated released date of September 13,

2029. His extensive criminal history demonstrates that his incarceration continues to provide an important protection to the public.

Accordingly, even if the Defendant was eligible for compassionate release, his motion should be denied based on the factors set forth in § 3553(a).

### III.   Conclusion

In sum, upon consideration of all pertinent factors, the motion for compassionate release should be denied.[8]

<div style="margin-left: 45%">

Respectfully submitted,

PHILIP R. SELLINGER
United States Attorney


        *s/ Edeli Rivera*
By:   Edeli Rivera
      Assistant U.S. Attorney

</div>

CC: Quadree Smith (via mail)

---

[8] If, however, the Court concludes that immediate release is warranted, the government respectfully requests that the Court order a 14-day quarantine and medical clearance prior to release to minimize the possibility of any spread of COVID-19 from the inmate to the public.